**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Richard P. Rollo, Esq.
Kevin M. Gallagher, Esq.
Travis S. Hunter, Esq.
Nicole K. Pedi, Esq.
Angela Lam, Esq.
Christian C.F. Roberts, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Steven L. Caponi, Esq.
Matthew B. Goeller, Esq.
K&L GATES LLP
600 King Street, Suite 901
Wilmington, Delaware 19801

> RE: *Laura Perryman, et al. v. Stimwave Technologies Incorporated*,
> C.A. No. 2020-0079-SG, Petitioner's Motion for Reargument

> Submitted: February 3, 2021
> Decided: February 17, 2021

Dear Counsel:

This Letter Opinion considers, and rejects, Petitioner Laura Perryman's Motion for Reargument[1] of my December 9, 2020 post-trial Memorandum Opinion[2] (the "Opinion"), finding that Laura Perryman ("Laura")[3] did not have a right to advancement. As this Court has noted on numerous occasions, relief via reargument is granted only in limited circumstances; "a successful movant must demonstrate

---

[1] Pet'r's Mot. for Reargument, Dkt. No. 132 ("Reargument OB").
[2] *Perryman v. Stimwave Techs. Inc.*, 2020 WL 7240715 (Del. Ch. Dec. 9, 2020) ("the Opinion").
[3] As in the Opinion, I refer to the Petitioners by their first name for clarity. I mean no disrespect thereby.

that the court *overlooked* a controlling precedent or principle of law, or misapprehended the facts, and that such error resulted in the outcome for which reargument is sought."[4]   Mere disagreement with the Court's decision is insufficient—such relief must be sought through appeal, not reargument.[5]

**Facts**[6]

At trial, the parties agreed, and the exhibits supported, that on November 11, 2019, Laura emailed what she purported was a copy of her indemnification agreement ("Laura's IA") to Stimwave and its attorneys.[7]  While Stimwave's charter provides for indemnification, its board of directors had approved indemnification agreements ("IAs) for certain fiduciaries that also provided for *advancement*, the right at issue here.  Laura's IA bore a January 1, 2018 date and was signed by Laura as both indemnitee and as CEO of Stimwave.[8]  Shortly after, on November 22, Laura and Stimwave entered into an engagement letter with Hogan Lovells US LLP ("Hogan Lovells") that provided that Hogan Lovells would represent Laura and

---

[4] *In re USG Corp. S'holder Litig.*, 2020 WL 7041190, at *1 (Del. Ch. Dec. 1, 2020).

[5] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 2019 WL 3814453, at *1 (Del. Ch. Aug. 14, 2019) ("A motion for reargument, as this Court has pointed out on numerous occasions, does not provide a forum to relitigate issues decided by the trial judge, and if the trial court is in error on those issues, vindication is available on appeal, not via reargument.").

[6] The facts, except where otherwise noted, are drawn from the exhibits jointly submitted at trial (and are referred to according to the numbers provided on the parties' joint exhibit list ("JX __")) or from the Opinion.  As this is a motion for reargument, I only briefly recount the pertinent facts; I refer interested readers, if any, to the Opinion for the full story.

[7] The Opinion at *3; JX 30.

[8] The Opinion at *3.

2

acknowledged that Stimwave would advance Laura's expenses. At that time Laura was threatened with litigation, by Stimwave as well as third parties, relating to her employment with Stimwave. That engagement letter was signed on behalf of Stimwave by Paul LaViolette, Laura's Co-Chairman of the Stimwave board of directors (the "Board").[9] I found, post-trial, that the January 1, 2018 date on the IA was incorrect, and that Laura had not signed an indemnification agreement until November 2019, by which time advanceable expenses were currently pending.[10] Between the purported date of entry of Laura's IA, disclosed on the copy Laura provided Stimwave (January 1, 2018), and the date of actual attempted entry of that agreement (November 2019), Stimwave had amended its charter to provide that Series D equity holders must approve transactions such as Laura's IA for those transactions to take effect. In other words, Laura's IA was a nullity absent Series D consent.[11] I found that such consent had not been given, and accordingly denied advancement rights. Laura points to this post-trial finding—that the Series D had neither consented nor waived consent to Laura's IA—as a factual error, subject to reargument.

---

[9] JX 36.

[10] The Opinion at *9.

[11] Article V, Section 6(d) of Stimwave's July 2018 Amended Charter requires Stimwave to "not [enter certain transactions], without first obtaining the approval (by vote or written consent as provided by law) of the holders of sixty-eight percent of [Series D stock outstanding], . . .and any such act or transaction shall be null and void ab initio and of no force and effect." JX 21.

Laura, in her Motion for Reargument, notes that LaViolette, in addition to being Stimwave's Co-Chairman of the Board, is the Series D representative on Stimwave's Board—something that Stimwave does not contest.[12] She argues that LaViolette's signing of the representation agreement for Stimwave was, in fact, also the consent of the Series D holders to the advancement agreement, a fact I disregarded, justifying reargument. This argument is untenable, and reargument must be denied.

To the extent this argument was properly before me at the time I issued the Opinion (a fact I assume without deciding here), it is fatally flawed. According to Board minutes, by December 20, 2019, the Stimwave Board had received information leading it to believe—correctly, as I ultimately found—that the January 1, 2018 date on Laura's IA was erroneous, and they terminated advancement. "[H]aving been presented an agreement that was purported to have been entered into by the Company on January 1, 2018 . . . [the Board] w[as] falsely led to believe that the Company had already contractually committed itself to advance [Laura's] fees" at the time the Hogan Lovells engagement letter was signed on behalf of Stimwave by LaViolette.[13]

---

[12] Reargument OB 2; *see* Resp't Stimwave Techs. Inc.'s Opp'n to Pet'r's Mot. for Reargument, Dkt. No. 137 [hereinafter "Reargument AB"].
[13] JX 46.

In the Opinion, I found that Laura's IA was not actually signed on January 1, 2018, despite the agreement bearing that date, and that Laura did not attempt to enter an indemnification agreement with Stimwave until November 2019. I also found that Series D stockholder approval was needed for indemnification agreements entered into after July 2018.[14] Accordingly, Laura's advancement right required approval by 68% of the Series D stockholders, as provided for in Stimwave's charter.[15]

Laura now argues that she did, in fact, obtain Series D approval for Laura's IA. She posits that LaViolette's signing of her engagement letter with Hogan Lovells, which acknowledges that Stimwave would advance Laura's expenses, provides the Series D stockholder consent required for such agreements executed after July 2018. Laura's argument is without merit.

**Analysis**

Laura's argument that she has, in fact, received Series D approval through LaViolette's signature on her engagement letter with Hogan Lovells is without merit for two reasons.

First, LaViolette's signature on the Hogan Lovells engagement letter does not purport to be a consent on behalf of the Series D stockholders for advancement. The

---

[14] The Opinion at *3, *8.
[15] *Id.*; *see also* JX 21.

Hogan Lovells engagement letter references neither Series D nor the term "consent"; instead, it provides for professional services to be provided to Laura, with the cost advanced by Stimwave.[16] Nor did LaViolette purport to sign the letter in his capacity as a Series D representative; rather, he signed it explicitly as "Co-Chairman of the Board" of "Stimwave Technologies, Inc."[17] There is no indication that LaViolette intended to consent, on behalf of the Series D stockholders rather than or in addition to Stimwave, to advancement.[18]

Laura's only argument to the contrary is that the engagement letter does not explicitly say that it is *not* a consent by the Series D stockholders. She thus relies only on an *inference* that LaViolette represented the Series D stockholders when he signed on behalf of Stimwave, and that his signature is evidence of consideration and consent or waiver by the Series D stockholders. But this inference is unsupported on its face—not only did LaViolette sign under his position as a director of Stimwave and not on behalf of the Series D stockholders, he also *did not represent* 68% of the Series D stockholders at the time,[19] the minimum required for consent

---

[16] *See* JX 36.

[17] *Id.*

[18] This is in sharp contrast to the situation of Dr. Marc Loev, whose IA Laura compares with hers. But Loev's indemnification agreement is subject to a document titled "Written Consent of the Holders of Series D Preferred Stock," which is signed by an individual who is both an officer of the general partner of SV Life Sciences Fund VI Strategic Partners, L.P. and an officer of the general partner of SV Life Sciences Fund VI, L.P.—who together purport to own over 68% of Series D stock. JX 58. That written consent, according to the Joint Exhibit List, is dated to May 28, 2020. Laura's IA is not subject to any such document that gives explicit written consent.

[19] Reargument AB 5. Laura did not contest this at oral argument.

under Stimwave's charter.[20]  In fact, on reargument, Stimwave points out that LaViolette was appointed by SV Health, which, on November 11, 2019, held only 27.6% of outstanding Series D stock.[21]  Laura's counsel did not contest this representation, but the point for reargument is that the trial record itself is devoid of evidence that LaViolette had the authority to give consent or waive rights on behalf of 68% of the Series D stockholders, just as it is devoid of evidence that he intended to do so.

Even more fundamentally, I find, Laura's Motion for Reargument suffers another, and fatal, defect.  It is undisputed that, on November 11, 2019, Laura submitted to the Stimwave Board a representation that she had an indemnification agreement providing advancement with Stimwave, and a purported copy of the IA which was, on its face, dated January 1, 2018.[22]  If that had, in fact, been the date on which Laura had executed Laura's IA, the Series D stockholders would *not have had any consent right* over advancement because, at the time, they were not stockholders and the pertinent Charter provision was not yet in place.[23]  The inference that Laura is asking me to draw is insupportable because it requires a state of mind that could

---

[20] JX 19.

[21] Stimwave represents in the Reargument AB that on November 11, 2019, SV Health owned 697,350 of the outstanding 2,526,238 shares of Series D Preferred Stock.  Reargument AB 5.  At oral argument, Laura's counsel did not contest these numbers.

[22] Laura's counsel, at oral argument, disputed that the date on Laura's IA constituted a "representation" that that was the date of execution, and instead characterized the date as a leftover from the form agreement.  True or not, the January 1, 2018 date is the *only* date on the agreement.

[23] *See* JX 17, JX 19, JX 21, JX 22.

not have existed: because Laura provided what I found to be a last-minute manufactured IA, backdated to January 1, 2018, the Series D stockholders could not have been on notice that their consent right had been triggered at the time LaViolette signed the Hogan Lovells engagement letter. *If Laura's IA had been as represented on its face, the Series D stockholders would have had no consent right.*[24] LaViolette cannot have intended to consent, because, due to Laura's creation of the backdated IA, he was unaware of any right to give or withhold consent at the time he signed. Likewise, the Series D stockholders cannot have waived the right to consent; they were unaware of the right to withhold consent, by reason of Laura's own action. They cannot be inferred to have waived the right as Laura now urges me to do.[25]

For the foregoing reasons, the Petitioner's Motion for Reargument is DENIED.

---

[24] This is particularly significant in light of the inherent misrepresentation upon which the Hogan Lovells engagement letter is based. Laura represented to both Hogan Lovells and Stimwave that she had an indemnification agreement executed before the consent right arose in July 2018—a representation that she maintained throughout trial. I have found that Laura in fact attempted to enter the IA in *November 2019*. Her representations throughout have been untrue and misleading in this regard. It also bears emphasizing that the misrepresentation was *of Laura's own creation*; she signed her indemnification agreement as both the representative of Stimwave and as the indemnitee. Even if the Series D stockholders were deemed to have consented or waived the consent right due to LaViolette's signing of the Hogan Lovells engagement letter—which the record cannot support—any purported consent or waiver would have been based on a materially misleading representation by Laura, created to induce their consent, and her request that I order advancement would be subject to rejection on the basis of unclean hands.

[25] "[T]hree elements must be demonstrated to invoke the waiver doctrine: (1) that there is a requirement or condition capable of being waived, (2) that the waiving party knows of that requirement or condition, and (3) that the waiving party intends to waive that requirement or condition." *Amirsaleh v. Bd. of Trade of the City of New York*, 27 A.3d 522, 529–530 (Del. 2011).

**IT IS SO ORDERED.**

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III


cc:     All counsel of record (by *File & ServeXpress*)